UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHAUN JENKINS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 13-553 (RMC) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**OPINION**

Plaintiff Shaun Jenkins sues the District of Columbia and Metropolitan Police Department Officers Kisha Coley and Rodney Fitts (collectively, Defendants) for violations of his First, Fourth, and Fifth Amendment rights, allegedly suffered when Officer Coley struck him several times with a metal baton on March 27, 2010, and Officer Fitts failed to stop her. Am. Compl. [Dkt. 9] ¶¶ 10, 12-15, 49-59. Officer Coley was charged criminally and pled guilty in D.C. Superior Court to two misdemeanor counts of simple assault, served a short sentence in D.C. jail, and resigned from the police force. *Id.* ¶ 20; *United States v. Coley*, No. 2010 CMD 018264 (D.C. Sup. Ct. 2010).[1] Mr. Jenkins now moves for partial summary judgment on Ms. Coley's liability for excessive force in violation of his rights under the Fourth Amendment (Count I) and in retaliation for his exercise of his First Amendment rights (Count III). *See* Mot. for Partial Summ. J. [Dkt. 25]. Ms. Coley's Opposition, Dkt. 27, fails to address Count III, and her guilty plea, through which she agreed to a factual proffer describing the underlying events, admits the material facts for one of the two assaults alleged in Count I that she cannot now

---

[1] Because Ms. Coley resigned from the Metropolitan Police Department as part of her guilty plea, this Opinion refers to her as Ms. Coley rather than Officer Coley for events occurring more than seven days after her guilty plea.

1

deny.² Mr. Jenkins therefore is entitled to summary judgment finding Ms. Coley liable for one of the assaults alleged in Count I and liable as to Count III.

## I. FACTS

It is undisputed that, in the early morning hours of March 27, 2010, Officer Kisha Coley encountered Shaun Jenkins outside a laundromat in the 3500 block of Georgia Avenue, N.W. Officer Coley, a woman, was alone on foot patrol, armed with a weapon and a metal baton known as an Armament System Procedure (ASP), which measured approximately twenty-six inches in length and weighed approximately twenty ounces. Am. Compl. ¶¶ 8-10; Mot. for Partial Summ. J., Ex. 8 (Pl.'s Statement of Facts) [Dkt. 25-8] ¶¶ 1-3. Officer Coley ordered Mr. Jenkins to "move on;" he objected but complied by walking northbound on Georgia Avenue. Am. Compl. ¶¶ 10-11; Pl.'s Statement of Facts ¶¶ 3-4. Mr. Jenkins alleges that Officer Coley followed him, "verbally harass[ing] him" along the way. Am. Compl. ¶ 10. A verbal argument ensued, during which Mr. Jenkins claims to have told Officer Coley that he was going to file a complaint against her at the Third District Substation, which was located a short distance away at Georgia Avenue and Park Road, N.W. Mr. Jenkins states that he proceeded toward the substation, crossing the street and heading back south on Georgia Avenue. *Id.* ¶ 11; Pl.'s Statement of Facts ¶¶ 4-5.³

---

² In the context of a motion for summary judgment, "it is settled law that [a] court may take judicial notice of other cases including the same subject matter or questions of a related nature between the same parties." *Fletcher v. Evening Star Newspaper Co.*, 133 F.2d 395, 395 (D.C. Cir. 1942). Because *Coley*, Criminal No. 2010 CMD 018264, concerned Officer Coley's conduct vis-à-vis Mr. Jenkins, the Court will take judicial notice of all papers filed in *Coley*, including the signed factual proffer on which Officer Coley agreed and on which her guilty plea was based, *see* Mot. for Partial Summ. J., Ex. 1 (Proffer) [Dkt. 25-1].

³ The Proffer to which Ms. Coley admitted in Superior Court does not differ. It states:

> At approximately 3:54 a.m., [Officer Coley] encountered . . . Shaun Jenkins, outside of the laundromat in the 3500 block of

The encounter became physical shortly thereafter. Mr. Jenkins alleges that, although he had not been "acting aggressively" and had his back turned toward Officer Coley, she struck him on the back of his head with her ASP. Am. Compl. ¶ 12; Pl.'s Statement of Facts ¶¶ 6-7.[4] Mr. Jenkins asserts that he then ran toward a police cruiser that had stopped on Georgia Avenue, shouting for assistance. Upon arriving at the cruiser, Mr. Jenkins states that Officer Rodney Fitts, who was driving, placed him against the rear of the car with his hands on the trunk. Mr. Jenkins did not resist Officer Fitts, but Officer Coley nonetheless ran toward him wielding her ASP. This time Office Coley's swing allegedly connected with Officer Fitts's knee and one of Mr. Jenkins's hands. Am. Compl. ¶¶ 13-14; Pl.'s Statement of Facts ¶¶ 9-12. Apologizing to

---

> Georgia Avenue, N.W., and told him to move on. Mr. Jenkins, who objected to being told to leave, walked northbound on Georgia Avenue while he and [Officer Coley] continued to argue back and forth. Mr. Jenkins then crossed the street and started walking back down Georgia Avenue while telling [Officer Coley] that he was going to report her to a supervisor at the Third District Substation located around the corner at 750 Park Road, N.W.

Proffer at 1.

[4] With respect to this assault, the Proffer to which Officer Coley agreed states:

> When [Mr. Jenkins] got closer to [Officer Coley's] location on his way to the substation, [Officer Coley] struck him on the back of his head with her [ASP]. According to an eyewitness, [Mr.] Jenkins was not acting aggressively toward[] [Officer Coley] and did not appear to know that he was about to be hit because he was walking away at the time.

Proffer at 1. The Proffer also states that Officer Coley "told a responding official that [Mr.] Jenkins ran up on her and she hit him across the chest with the [ASP] to get him away. When [Mr.] Jenkins 'turned to get away,' she hit him on the back of the head because '[she] wasn't going to let him get away.'" *Id.* at 2.

Officer Fitts, Officer Coley "again" struck Mr. Jenkins with her ASP. Pl.'s Statement of Facts ¶ 13.[5]

Mr. Jenkins was handcuffed and transported to Howard University Hospital for treatment for "a bloody cut on his left hand, a contusion on his right wrist, and head injuries." Am. Compl. ¶ 17; *see also* Pl.'s Statement of Facts ¶¶ 14, 16. Mr. Jenkins contends that Officer Coley admitted to a responding police officer that she had hit Mr. Jenkins on the back of his head with her ASP. Am. Compl. ¶ 18; *see also* Pl.'s Statement of Facts ¶¶ 18-19 (Officer Coley "told a responding official that [Mr.] JENKINS ran up on her and she hit him across the chest with the [ASP] to get him away. When [Mr.] JENKINS 'turned to get away,' [she] hit him on the back of the head because 'I wasn't going to let him get away.'").

On September 28, 2010, Officer Coley was charged in D.C. Superior Court with assaulting Mr. Jenkins and Officer Fitts. Am. Compl. ¶ 20; Pl.'s Statement of Facts ¶ 23; *see also Coley*, Criminal No. 2010 CMD 018264.[6] Officer Coley subsequently agreed to a plea. In

---

[5] Regarding these assaults, Officer Coley's Proffer from the criminal plea is consistent:

> Meanwhile, in response to [Officer Coley's] call for assistance, Officer Rodney Fitts left the Third District Substation and seconds later pulled his cruiser into the middle of Georgia Avenue. From six to seven car lengths away, . . . . Officer Fitts . . . saw [Mr.] Jenkins turn in his direction and run toward[] Officer Fitts yelling, 'officer, officer!' Without incident, Officer Fitts put [Mr.] Jenkins against the rear of his cruiser with [Mr.] Jenkins's hands on the trunk. [Officer Coley] then ran up, [ASP] still held up, and swung one time, hitting Officer Fitts in the back of the knee and possibly one of [Mr.] Jenkins's hands. When Officer Fitts said, 'what the f---?' to [Officer Coley], she said 'sorry' and then swung again, hitting [Mr. Jenkins] again.

Proffer at 1.

[6] The standard "red book" jury instructions used in D.C. clarifies that the crime of simple assault includes both "assault" and "battery." *See* Criminal Jury Instructions for the District of Columbia, No. 4.100 (5th ed. 2013).

exchange for her plea of guilty to two misdemeanor assault charges, the government agreed to request a sentence of only two weekends in jail; to dismiss an unrelated domestic violence prosecution; and not to pursue any additional or greater charges, including a civil rights violation or assault with a dangerous weapon. Mot. for Partial Summ. J., Ex. 4 (Plea Tr.) [Dkt. 25-4] at 6-7. Officer Coley signed a written proffer of facts concerning the events of March 27, 2010, to-wit: "I have read and discussed the Government's Proffer of Facts with my attorneys, Harold Martin and David Benowitz. I agree, and acknowledge by my signature[,] that this Proffer of Facts is *true and correct*." Proffer at 2 (emphasis added). Officer Coley also consented to the placement of the Proffer and plea agreement in her official personnel file, and agreed to resign from the police force within seven days of her guilty plea. Plea Tr. at 3. After conducting a plea colloquy, Superior Court Judge Marisa J. Demeo accepted Officer Coley's guilty plea and sentenced her to six days in jail (to be served on weekends) and one year of probation. *See* Mot. for Partial Summ. J., Ex. 3 (Judgment and Commitment Order) [Dkt. 25-3].

On March 27, 2013, Mr. Jenkins sued all Defendants in D.C. Superior Court. The case was removed to this Court on April 23, 2013. *See* Notice of Removal [Dkt. 1]. After Mr. Jenkins filed an Amended Complaint and Ms. Coley answered, Mr. Jenkins moved for summary judgment against Ms. Coley on liability for Counts I and III and she opposed.

## II. LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make

5

a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### III. ANALYSIS

Mr. Jenkins argues that he is entitled to summary judgment on liability as to Ms. Coley because her admissions of repeated use of excessive force in violation of his constitutional rights under the Fourth and First Amendments bar her current defense.[7] The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizure . . . ." U.S. Const., amend. IV. In *Graham v. Connor*, 490 U.S. 386 (1989), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194, 201 (2001), *modified by Pearson v. Callahan*, 555 U.S. 223, 233-44 (2009), the Supreme Court instructed that all claims of excessive force by law enforcement personnel in arrests, investigatory stops, or other seizures, are to be analyzed under the Fourth Amendment's standard of "objective reasonableness," *id.* at 388. The First Amendment prohibits government action that "abridg[es] the freedom of speech."

---

[7] Mr. Jenkins sues Ms. Coley in her personal capacity under 42 U.S.C. § 1983, giving the Court federal question jurisdiction. *See* 28 U.S.C. § 1331. Venue also is proper here. *See* 28 U.S.C. § 1391(b)(2).

6

U.S. Const., amend. I. It is violated when an individual engages in protected speech and law enforcement takes action that effectively chills that speech. *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

Underlying both alleged constitutional violations are two discrete assaults. Mr. Jenkins asserts that Officer Coley used excessive force when she struck him with her ASP on the back of his head after he told her that he would report her policing to the nearby police substation. He also contends that Officer Coley used excessive force when she struck him with her ASP when he was obeying Officer Fitts's commands at the police cruiser. In neither circumstance, he argues, was he threatening Officer Coley in any way. Mr. Jenkins also notes that Ms. Coley already has admitted the wrongfulness of her actions through her guilty plea before Judge Demeo. Ms. Coley responds that she is protected from suit by qualified immunity for acting reasonably within the scope of her former official duties.

Qualified immunity shields government officials from suit relating to the performance of their discretionary functions unless an official's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity provides "an *immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). For this reason, courts decide whether qualified immunity protects a government defendant early in litigation to avoid, if possible, the costs and intrusions of discovery and/or trial. *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) ("*Harlow* and *Mitchell* make clear that the defense is meant to give government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such *pretrial* matters as discovery, as inquiries of this kind can be peculiarly disruptive of effective government." (internal quotations and citations omitted)). A

7

defendant bears the burden of pleading and proving that she is entitled to qualified immunity. *Harlow*, 457 U.S. at 812. In determining whether a government official is entitled to qualified immunity from personal liability, federal courts apply the two-step test first annunciated in *Saucier*, 533 U.S. at 201:

> First, a court must decide whether the facts that a plaintiff has alleged (see Fed. R. Civ. Pro. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.

*Pearson*, 555 U.S. at 232 (quoting *Saucier*, 533 U.S. at 201). Courts have the discretion to address the steps in any order. *Id.* at 236.

### A. Count I: The Fourth Amendment Claim

Ms. Coley does not deny that Mr. Jenkins's right to be free from excessive force by police was clearly established on March 27, 2010, and so this aspect of his claim is undisputed. *See CSX Transp., Inc. v. Commercial Union Ins. Co.*, 82 F.3d 478, 482-83 (D.C. Cir. 1986); *see also Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004); D.D.C. L. Civ. R. 7(b). Instead, Ms. Coley uses the entirety of her six-page Opposition to argue that Mr. Jenkins has not established that her conduct was unreasonable, and thus, has failed to prove an actual violation of his Fourth Amendment rights.

The Court must first determine the uncontested relevant facts. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). In the context of a motion for summary judgment, a federal court views the facts and draws reasonable inferences in the light most favorable to the opposing

8

party—here, Ms. Coley—when there is a genuine dispute as to those facts. *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). Ms. Coley presents the events of March 27, 2010, as a confrontation between a hapless cop patrolling the streets at night by herself and a defiant, possibly intoxicated, vagrant. She argues that a jury could infer that she "properly focused on Mr. Jenkins since he looked to be a vagrant standing aimlessly on the street," Opp'n [Dkt. 27] at 4, and denies that either Mr. Jenkins or she ever crossed Georgia Avenue, Opp'n, Ex. 1 (Def.'s Statement of Facts) [Dkt. 27-1] at 5. Officer Coley admits to striking Mr. Jenkins in the chest *and* on the back of his head, but asserts that she unleashed the second blow only because Mr. Jenkins was "belligerent," had "ignor[ed] her commands to stop as he [came] directly toward her," and "kept moving toward her" even after she struck him in the chest with her ASP. Opp'n at 3-4. She also argues that the facts are "unclear" as to (i) whether she actually struck Mr. Jenkins after Officer Fitts had placed him against the cruiser, and (ii) whether Mr. Jenkins suffered any injuries. *Id.* at 4-5. Finally, she contends that only a jury can decide whether she "acted reasonably under the circumstances." *Id.* at 4-5.

The Court starts with the facts on which Ms. Coley's plea was based. Without doubt, Ms. Coley formally admitted to "intentionally, knowingly, and voluntarily" using her ASP to strike both Officer Fitts and Mr. Jenkins "at the car," when Mr. Jenkins "was not resisting arrest and did not pose any threat," with force that "was unnecessary and wanton." Proffer at 1. These admissions disallow any later argument from Ms. Coley that those facts are unclear or that her actions were reasonable. In addition, Ms. Coley admitted striking Mr. Jenkins on the back of his head either when (i) according to the prosecutor, Mr. Jenkins was heading south on Georgia

9

Avenue on his way to the police substation; or (ii) according to Ms. Coley's contemporaneous statement, when he had "'turned to get away.'" Proffer at 2. Under either description, Mr. Jenkins was walking away, with his back to Officer Coley when she hit him on the head with her ASP.

Although it is unclear from the Proffer whether Officer Coley struck Mr. Jenkins once or twice at the police cruiser and whether one or both of those blows connected with Mr. Jenkins's hand(s), *see* Proffer at 1 ("[Officer Coley] then ran up, [ASP] still held up, and swung one time, hitting Officer Fitts in the back of the knee and possibly one of [Mr.] Jenkins's hands. When Officer Fitts said, 'what the f---?' to [Officer Coley], she said 'sorry' and then *swung again, hitting [Mr.] Jenkins again*." (emphasis added)), this discrepancy is immaterial to the question of liability. Having admitted in criminal court that she hit Mr. Jenkins while he was at the cruiser, Ms. Coley cannot now deny this fact.

The doctrines of judicial estoppel and collateral estoppel prohibit Ms. Coley from relitigating these admissions here. Judicial estoppel bars a party from taking a certain legal position in one proceeding and later, "simply because his interests have changed, assum[ing] a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). Widely recognized as a means for "protect[ing] the integrity of the judicial process," *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotations and citation omitted), judicial estoppel may be invoked by a court at its discretion, *id.* at 750. *See also Thore v. Howe*, 466 F.3d 173, 185 (1st Cir. 2006) (reliance on judicial estoppel applies based on the facts at issue rather than "any per se rule that judicial estoppel always applies or never applies to facts admitted during a guilty plea"). Three general considerations guide invocation of judicial estoppel: (1) whether "a party's

10

later position [is] . . . clearly inconsistent with its earlier position;" (2) "whether the party has succeeded in persuading a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750-51 (internal quotations and citations omitted).

All three considerations counsel application of judicial estoppel here as to Officer Coley's assault on Mr. Jenkins at the police cruiser. First, the facts Ms. Coley wants to present to a jury are plainly at odds with the facts to which she agreed when pleading guilty in Superior Court—she argues that she is civilly innocent in the former and admitted she was criminally guilty in the latter. *See* Proffer at 1-2; Plea Tr. at 8-12. Second, Ms. Coley's admissions concerning the events at the police cruiser persuaded Judge Demeo to accept her plea. Judge Demeo conducted a plea colloquy under D.C. Superior Court Rule 11,[8] and plainly stated that she was accepting Officer Coley's guilty plea based on the Proffer to which Officer Coley had agreed. Plea Tr. at 14. Third, estopping Ms. Coley from relitigating facts clearly admitted during the course of her criminal guilty plea avoids imposition of a significant and unfair burden on Mr. Jenkins. The plea agreement resulted in a minimal sentence (six days of weekend incarceration and one year of probation) and notable benefits (dismissal of an unrelated domestic violence prosecution and the government's agreement to forego additional or greater charges). Such leniency flowed directly from the Proffer to which Ms. Coley agreed. Mr. Jenkins should

---

[8] D.C. Superior Court Rule of Criminal Procedure 11 closely tracks Federal Rule of Criminal Procedure 11. It states, in relevant part, that "[n]otwithstanding the acceptance of a plea of guilty, the Court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." D.C. Sup. Ct. R. 11(f). *Cf.* Fed. R. Crim. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.").

11

not be required to prove that a statement accepted as "true and correct" by Officer Coley in a criminal case in Superior Court is, in fact, true and correct in this civil case in Federal Court.

Similarly, collateral estoppel, or issue preclusion, prevents Ms. Cooley's arguments here. Collateral estoppel applies when: (1) "the issue must have been actually litigated, that is, contested by the parties and submitted for determination by the court"; (2) "the issue must have been actually and necessarily determined by a court of competent jurisdiction in the first trial"; and (3) "preclusion in the second trial must not work an unfairness," for "[p]reclusion is sometimes unfair if the party to be bound lacked an incentive to litigate in the first trial, especially in comparison to the stakes of the second trial." *Otherson v. Dep't of Justice, INS*, 711 F.2d 267, 273 (D.C. Cir. 1983) (internal quotations and citation omitted). "[D]istrict courts in this Circuit have routinely treated criminal convictions—including those based on guilty pleas—as conclusive proof of the facts supporting the conviction, and have thus given them preclusive effect in subsequent civil actions." *Miller v. Holzmann*, 563 F. Supp. 2d 54, 77 (D.D.C. 2008) (internal quotations omitted), *vacated in part and remanded on other grounds by United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871 (D.C. Cir. 2010); *see also Hinton v. Shaw Pittman Potts & Trowbridge*, 257 F. Supp. 2d 96, 100 (D.D.C. 2003) ("A criminal conviction is conclusive proof and operates as an estoppel on the defendants as to the facts supporting the conviction in a subsequent civil action." (internal quotations and citation omitted)). There is no reason to find that Officer Coley's guilty plea does not carry similar preclusive force here with respect to the assault at the police cruiser.

The Court recognizes that the application of the doctrines of judicial estoppel and collateral estoppel to preclude the relitigation of facts admitted in a Rule 11 proceeding is not settled law in this jurisdiction. The D.C. Circuit has avoided resolving the question, *see Miller*,

608 F.3d at 890, and even has suggested that only parties, or privies, to the first action can invoke the preclusive effect of a guilty plea, *Otherson*, 711 F.2d at 277 n.11. However, Ms. Coley has waived the point. She fails in opposition to challenge Mr. Jenkins's invocation of the doctrines of judicial estoppel and collateral estoppel. Indeed, Ms. Coley urges the Court to incorporate her Proffer from her guilty plea by attaching it and the Plea Transcript to her Opposition and contesting their meaning. *See* Opp'n, Ex. A [Dkt. 27-3] and Ex. B [Dkt. 27-4]. In short, there is no doubt that Ms. Coley waived arguments regarding both the judicial and collateral estoppel doctrines. *See Hopkins*, 284 F. Supp. 2d at 25.

So estopped, Officer Coley's Proffer and guilty plea constitute record evidence as to what transpired on March 27, 2010. On summary judgment, a court is not required to adopt a party's version of the facts that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it." *Scott*, 550 U.S. at 380 (disapproving reliance on factual assertions of opponent that were clearly contradicted by videotape). Such is the case here. Ms. Coley argues that she should be allowed to argue facts that contradict the material facts to which she formally agreed as part of her criminal plea. At least with respect to the assault at the police cruiser, this she cannot do.

Despite her admissions, Ms. Coley now contends that her actions were reasonable. Again, her acknowledgment of the relevant facts at her guilty plea proves fatal to this defense as it regards the assault at the police cruiser. Ms. Colley has admitted, under oath, that she intentionally struck Mr. Jenkins and Officer Fitts with force that "was unnecessary and wanton." Proffer at 2. There is no possible counter.

It is a closer question, however, whether Officer Coley should be estopped from contesting the reasonableness of the blow she inflicted to the back of Mr. Jenkins's head.

13

Reasonableness in excessive force cases is measured "in light of the facts and circumstances confronting [the officer], without regard to [his or her] underlying intent or motivation." *Graham*, 490 U.S. at 397. In applying this standard, courts are mindful that law enforcement officers "use 'some degree of physical coercion or threat thereof' during the course of an arrest, and 'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Rogala v. District of Columbia*, 161 F.3d 44, 54 (D.C. Cir. 1998) (quoting *Graham*, 490 U.S. at 395-97).

Applying this standard to the admitted facts, the Court finds that it is unclear on this record as to whether Officer Coley used excessive force that was objectively unreasonable when she struck Mr. Jenkins on the back of his head as he was headed away from her. To be sure, the story Ms. Coley's counsel paints is questionable. *See* Opp'n at 3 (alleging that Mr. Jenkins "kept moving toward [Officer Coley] [after she had struck him in the chest], so she stepped to the side, out of his way, and swung at him again," and that her "ASP connected with the back of his head" only "[a]s he moved past her in the orange darkness"). Juxtaposed to this colorful prose is Ms. Coley's contemporaneous statement and Proffer.[9] The Proffer, to which Officer Coley agreed, omitted any reference to Mr. Jenkins coming at her after she allegedly struck him on the chest with her ASP. Rather, memorialized within the Proffer, in her own words, is a very different sequence of events: Officer Coley contemporaneously reported that Mr. Jenkins "ran up on her," she hit him on his chest with her ASP, and when he "'*turned to get away*' she hit him on the back of the head because '[she] wasn't going to let him get away.'"

---

[9] Counsel's description is unmoored from any fact in the record or Ms. Coley's contemporaneous statements and is unsupported by an affidavit. It is merely hyperbole. *See Celotex*, 477 U.S. at 324 (explaining that where, as here, the nonmoving party will bear the burden of proof at trial on a dispositive issue (*i.e.*, qualified immunity), "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answer to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." (internal quotations omitted)).

14

Proffer at 2 (emphasis added). Notably, there is no suggestion that Mr. Jenkins committed any crime that might have warranted his arrest.

> The Court recognizes that the Proffer is prefaced by the following proviso:
>
> This statement of facts does not include all of the facts known to the parties in this case. The statement sets forth facts sufficient to prove that the defendant committed the offenses to which she is pleading guilty, as well as certain facts that are relevant to sentencing in this matter.

Proffer at 1. If Mr. Jenkins were moving toward Officer Coley with malice or intent to harm when she struck him on the back of his head, it is strange that she agreed to a Proffer that omitted this detail, especially as it would have been relevant to sentencing. Nonetheless, the proviso makes Ms. Coley's current position not "clearly inconsistent" with her earlier position on the strike to Mr. Jenkins's head, which is factually admitted. *New Hampshire*, 532 U.S. at 750. The specific circumstances leading to Officer Coley striking Mr. Jenkins on the back of his head with her ASP were never raised at the plea hearing or litigated. *See Otherson*, 711 F.2d at 273. Accordingly, whether Officer Coley was objectively reasonable when she struck Mr. Jenkins on the back of his head is not susceptible to judicial estoppel or collateral estoppel. The question cannot be decided on the current record. The Court therefore will grant summary judgment to Mr. Jenkins on his Motion for Partial Summary Judgment as to Ms. Coley's liability for striking him at the police cruiser.

### B. Count III: The First Amendment Claim

Mr. Jenkins also asserts a claim based on 42 U.S.C. § 1983 for alleged violation of his rights under the First Amendment. "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). In order to state a claim for retaliation in violation of the First Amendment, a

15

plaintiff must show: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley*, 268 F.3d at 73 (citation omitted). Ms. Coley totally ignores Mr. Jenkins's First Amendment claim and the *Curley* analysis, either factually or legally. By her silence, she does not dispute that her actions violated Mr. Jenkins's constitutional rights to free speech, or that his right to be free from retaliation was not clearly established in March 2010. Indeed, Ms. Coley never acknowledges that Mr. Jenkins moved for summary judgment on her liability for Count III. In short, Ms. Coley does not contest that she struck Mr. Jenkins with her ASP in retaliation for his exercise of his First Amendment right to report her actions to the nearby police substation.

A presumption that Ms. Coley's Opposition constitutes a general rejoinder to Mr. Jenkins's motion for judgment on Count III is insufficient. In brief, Ms. Coley argues only that she acted reasonably. Reasonableness is the measure to evaluate a claim under the Fourth Amendment but does not provide the measure to decide whether a violation of the First Amendment has occurred. *See id.* at 73. Without any opposition to Mr. Jenkins's motion on First Amendment liability, Ms. Coley has conceded the point.[10] *See Hopkins*, 284 F. Supp. 2d at 25.

### IV. CONCLUSION

Mr. Jenkins's Motion for Partial Summary Judgment on Ms. Coley's liability for violating his constitutional rights as alleged in Counts I and III will be granted in part. Ms. Coley will be found liable for the assault at the police cruiser as alleged in Count I and for retaliating against Mr. Jenkins for exercising his First Amendment rights as alleged in Count III.

---

[10] The extent of damages caused by either constitutional violation is neither argued nor decided in this Opinion, which addresses liability only.

16

The Motion for Partial Summary Judgment on the alleged injury from the blow to Mr. Jenkins's head will be denied without prejudice as genuine issues of material fact exist on this record.

As for Ms. Coley's arguments for qualified immunity, they will be denied. Her argument that she is entitled to qualified immunity for the assault at the police cruiser will be denied. Likewise, her argument that she is entitled to qualified immunity for the blow to the back of Mr. Jenkins's head cannot be decided on this record and will be denied. Finally, without opposition, Ms. Coley will be denied qualified immunity for retaliating against Mr. Jenkins for exercising his First Amendment rights, as alleged in Count III.

A memorializing Order accompanies this Opinion.

/s/
ROSEMARY M. COLLYER
Date: December 18, 2013    United States District Judge